IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARC E. BERCOON AND WILLIAM A. GOLDSTEIN | Criminal Action No.<br><br>1:15-CR-022-LMM |

**Government's Response to Defendant Bercoon's Motion to Reconsider Bail Pending Sentencing**

The United States of America, by Byung J. Pak, United States Attorney, and Alana R. Black, Stephen H. McClain, and Kamal Ghali, Assistant United States Attorneys for the Northern District of Georgia, files this Response to Marc Bercoon's Motion for Reconsideration of Bail Pending Sentencing, Doc. 387

**1. Relevant Procedural History.**

On February 21, 2018, a jury sitting in the Northern District of Georgia convicted Marc E. Bercoon and William A. Goldstein of perpetrating two sophisticated frauds including the market manipulation of a publicly traded stock.[1]  As a result, Bercoon now faces the possibility of a 240-month sentence based on the wire fraud conviction alone.  *See,e.g.*, 18 U.S.C. § 1343.  On February

---

[1] *See* Doc. 374 (jury convicting both defendants of conspiracy to commit mail and wire fraud (as to Find.com), two counts of mail fraud (Find.com), three counts of wire fraud (Find.com), conspiracy to commit securities fraud and wire fraud (MCGI), four counts of wire fraud (MCGI), and one count of securities fraud (MCGI)).

1

21, 2018, the Court remanded Bercoon into the custody of the U.S. Marshals. Doc. 372.

This Court has currently scheduled Bercoon's sentencing hearing for May 30, 2018, although it appears that the hearing is likely to be continued.  On April 2, 2018, Bercoon moved this Court to "reconsider bail pending sentencing."  Doc. 387.

**2. By statute, Bercoon is presumptively a risk of flight and a danger to the community.**

Title 18, United States Code, Section 3143(a) provides that the "judicial officer <u>shall order</u> that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence. . . be detained, unless the judicial officer finds by <u>clear and convincing evidence</u> that the person is not likely to flee." (Emphasis added). Cf. *United States v. Ben-Ari*, 537 F. App'x 828, 831 (11th Cir. 2013) ("The court may only order the defendant released upon such a finding.").

As the Bail Reform Act's legislative history shows, the statute is designed to "eliminate" the presumption that a convicted defendant will be released on bail. *See* Report on the Committee on the Judiciary of the United States Senate, 98th Congress, 1st Session, Report No. 98-225, at 26 (hereafter "Senate Report").  *See also United States v. Bonavia*, 671 F. Supp. 752, 753 (S.D. Fla. 1987) ("The legislative history and standard reflect a strong policy on the part of Congress <u>favoring incarceration upon conviction</u>.") (emphasis added).  *See also* Senate Report, at 26 ("Once guilt of a crime has been established in a court of law, there is no reason

to favor release pending imposition of sentence."). Indeed, Congress was concerned that the "release of a defendant into the community after conviction may undermine the deterrence effect of the criminal law." *Id*.

Given the concerns for deterrence, the Bail Reform Act of 1984 requires courts to treat a defendant's "dangerousness on an equal footing as the consideration of appearance." *Cf.* Senate Report, at 12 ("[T]he Committee has determined that danger to the community is as valid a consideration in the pretrial release decision as is the presently permitted considerations flight. Thus, subsection (a), like the other provisions of section 3142, places the consideration of the defendant dangerousness on an equal footing with the consideration of appearance.").

To that end, Federal Rule of Criminal Procedure 46(c) explicitly notes that the provisions of Title 18, United States Code, Section 3143 "govern release pending sentencing" and that "[t]he <u>burden</u> of establishing that the defendant will not flee or pose a danger to any other person or to the community <u>rests with the defendant</u>." (Emphasis added).

"Unlike a defendant who has not yet been convicted and for whom the statute gives a presumption for bail except in certain circumstances, see 18 U.S.C. § 3142(b), once a defendant has been convicted, albeit not yet sentenced, <u>the burden shifts</u> to defendant. The court 'shall order' detention unless defendant shows by 'clear and convincing evidence' that (1) s/he is not likely to flee or (2) pose a danger to the safety of the community or any person therein if released." *United States v. Strong*, 775 F.2d 504, 505 (3d Cir. 1985) (emphasis added).

"Even if a defendant proffers sufficient evidence tending to rebut this presumption, the presumption still remains a factor to be considered by the Court in evaluating whether Defendant should be detained." *United States v. Jinwright*, No. 3:09-CR-00067-W, 2010 WL 2926084, at *1 (W.D.N.C. July 23, 2010) (quotation marks omitted).[2]

### 3. Bercoon cannot meet the legal standard for pre-sentencing release from custody.

In his three-page motion, Bercoon advances two arguments to show that Bercoon is neither a risk to the community nor a risk of flight. First, Bercoon notes that, by and large, he has historically complied with his <u>pretrial</u> release conditions. Doc. 387, at 2. Second, he claims that Bercoon's father is willing to pledge $250,000 to the registry of the Court to secure his son's release. Doc. 387, at 2-3.

---

[2] In the context of explaining the weight to afford the presumption in the (different but related) context of the Bail Reform Act's "presumption" that certain defendants should be detained before trial, *see* 18 U.S.C. § 3142(e), the Eleventh Circuit has noted that rebutting the presumption does "not erase[]" it. *United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988). "[T]he presumption remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence." *United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990). Here, the provisions of 18 U.S.C. § 3142(b) are more powerful than a mere presumption; it requires a defendant to show, by "clear and convincing" evidence, that he is not a risk of flight or danger to the community.

Importantly, Bercoon does not argue that this Court should release him on bond pending an <u>appeal</u>. To prevail on such a request, Bercoon would also have to show that (a) "the appeal is not for the purpose of delay" and (b) he intends to "raise[] a substantial question of law or fact likely to result (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b). That's a tall order.[3]

This makes releasing Bercoon from custody—not long before his sentencing—unreasonably risky. His motion, in essence, asks for a brief interruption from custody only to be detained again after the sentencing hearing. But Bercoon will not be prejudiced by his current detention as he will receive credit (against what is likely to be a significant guidelines range) for the time he spends in custody. *See* 18 U.S.C. § 3585(b). In short, briefly releasing Bercoon from custody poses an unreasonable risk that he will flee before his sentencing.

**A. Bercoon's proof of compliance with pretrial release conditions cannot carry his burden of proof to show by clear and convincing evidence that he is not likely to flee.**

Bercoon cannot meet his burden of proof. For starters, Bercoon's pretrial conduct has little bearing on whether he is <u>presently</u> a risk of flight now that a jury has convicted of him of twelve serious fraud-related felonies. *See,e.g.*, *United*

---

[3] Notably, Bercoon could not prevail on a motion for bond pending on appeal (as he has not and could not identify any issue likely to result in a reversal of his conviction on twelve felony fraud counts).

*States v. Mackey*, 1:10-CR-00310-WSD-JFK, Doc. 166, at *4 (N.D. Ga. Jul. 19, 2012); *United States v. Holtz*, No. CRIM. A. 92-459, 1995 WL 106895, at *2 (E.D. Pa. Mar. 13, 1995) ("Holtz may have been present out of the belief that a jury would exonerate him and that that incentive disappeared upon conviction."). Given the jury's verdict, "[t]he possibility of imprisonment has now become a certainty." *Mackey*, 1:10-CR-00310-WSD-JFK, at *4; *cf. United States v. Hill*, , 2007 WL 1231729, at *1 (N.D. Ga. Apr. 24, 2007) ("[T]his certain lengthy sentence gives the defendant an overwhelming motivation to flee. The court finds further that the defendant's motivation to flee is not overcome by the proposed addition of property security offered by his family members.") (Thrash, J.). As one court put it, "[s]omething has changed since trial; Defendant is no longer presumed innocent but is guilty of the counts of conviction. His legal status has changed, increasing his incentive to flee." *Jinwright*, 2010 WL 2926084, at *5.

Notably, Bercoon does not dispute that the federal guidelines will recommend a term of imprisonment. *United States v. Miell*, No. CR07-101-MWB, 2009 WL 1956451, at *2 (N.D. Iowa July 6, 2009) ("The prosecution has represented, and defendant Miell does not contest, that the federal sentencing guidelines will recommend a term of imprisonment for defendant Miell's offense. Accordingly, the possibility of having to serve a substantial term of imprisonment offers a motive for defendant Miell to take flight.").

Bercoon not only has a significant motive to flee, he has the means to do so. As Bercoon acknowledges, his father has access to significant resources and appears willing to spend it on his son's behalf. Moreover, Bercoon has access to

6

significant funds through his wife's involvement with a business named Nationwide Locum Tenens, LLC. Indeed, Nationwide Locum Tenens's bank records show that from 2015 through 2016, it made numerous payments on behalf of the Bercoon family, including over $500,000 in payments related to Rhonda Bercoon's American Express accounts.[4]

There is also no reason to take Bercoon at his word that he will not flee. As this Court is aware, Bercoon perpetrated a multi-million dollar fraud involving the online search engine, Find.com; that scheme was perpetrated by a series of lies to investors.

Bercoon has also shown a willingness to exploit others for his personal gain. Indeed, he participated in a sophisticated stock market manipulation that left investors like Richard Roberson holding the bag. Trial testimony showed that he manipulated the market, in part, by also manipulating his long-time friend Marc Rosenberg; Bercoon convinced Rosenberg to personally trade stock in his own name while Bercoon pulled the strings (even to the point of drafting emails for Rosenberg to send his broker).

---

[4] Evidence from the wiretap suggests that Bercoon may be hiding assets from the SEC by placing assets in his wife's name. For example, on August 19, 2011 (session 4376), the wire captured Bercoon explaining to his father, in substance, that he was starting a new business, with the proceeds to be split three ways between himself, Goldstein, and "the website guy." When Bercoon's father asked how Bercoon and Goldstein would be able to keep the profits given the SEC matter, Bercoon responded that the business would be placed in Rhonda Bercoon's name.

Moreover, Bercoon defrauded investors as part of L.A. Digital. In September 2010, a U.S. District Judge in the Central District of California found good cause to believe that Bercoon and co-defendant William Goldstein had defrauded investors. The court's order noted that the pair had raised at least $3.2 million in an unregistered fraudulent offering of securities to the general public; the court froze their assets given that over 90% of the fraudulently raised funds were unaccounted for. *See SEC v. LADP Acquisition, Inc., William A. Goldstein, and Marc E. Bercoon*, Case No. 2:10-CV-06835 (C.D.Ca. Sep. 29, 2010), Doc. 19; *see* Doc. 1 (describing fraud and its relationship to an entity named "L.A. Digital"). Bercoon currently owes the SEC $3,460,212.61 (including pre- and post-judgment interest). Doc. 70 (August 30, 2011 judgment), 105. Though he has access to funds, Bercoon has failed to pay a dime to the SEC.

In short, the Court has little reason to trust Bercoon. To that end, the Court should consider Bercoon's bizarre behavior upon conviction, including his request for 24-hours of release to ostensibly prevent his wife's health insurance coverage from lapsing. To date, Bercoon has failed to explain what his physical release from custody for 24 hours had to do with his wife's health insurance coverage.

**B. The fact that Bercoon's father is willing to pledge money to secure his release is not "clear and convincing" evidence that Bercoon is not a risk of flight.**

The fact that Bercoon's father is willing to pledge a large sum of money to secure his son's pre-sentence release is not "clear and convincing" evidence that Bercoon is not a risk of flight. *See United States v. Holtz*, 1995 WL 106895, at *4

8

(E.D. Pa. Mar. 13, 1995) ("We recognize that Mr. Hess's promise is significant proof of his trust in Holtz, and we have no doubt that Mr. Hess is acting in complete good faith. Yet the proposed security does not present clear and convincing evidence that Holtz will not flee if released."). Bercoon's father is 94 years old. Doc. 387, at 2. Nothing in the motion reveals whether Bercoon's father trusts that his son will appear for sentencing or whether Bercoon has simply talked his father into giving him one last chance to flee. Even if Bercoon's father trusts his son, the jury's verdict, Bercoon's history of exploiting others, as well as the prior SEC enforcement action against Bercoon, should give this Court pause before trusting that Bercoon will not flee and leave his father holding the bag.

4. **Bercoon does not carry his burden of proving that he is not a danger to the community.**

As noted above, Bercoon bears the burden of proving that he is not a danger to the community. *Cf. United States v. Norman*, No. 08-TP-80004CR, 2009 WL 464078, at *3 (S.D. Fla. Feb. 24, 2009) ("The Defendant poses a threat of economic danger to the community, as exemplified by his original conviction for bank fraud combined with the instant violations."); *see also Mackey*, 1:10-CR-00310-WSD-JFK, at *7 ("It is clear that the 'danger to the community' prong of Section 3143 includes the risk of economic or financial danger to the community.") (collecting cases). Yet, his motion is silent on this issue. Although the Government focused on the question of Bercoon's risk of flight following Bercoon's conviction, Bercoon's history of fraudulent behavior shows that he

remains a danger to the community.  Bercoon's silence on this issue means, by definition, that he has not carried his burden of proof.

Bercoon is a serial fraudster.  And he bears the burden of showing that he will not use his release from custody to swindle creditors, investors, and members of the public out of their money.

### Conclusion

Bercoon's motion to reconsider bail should be denied.

        Respectfully submitted,

        BYUNG J. PAK
          *United States Attorney*


        /s/ ALANA BLACK
          *Assistant United States Attorney*
        Georgia Bar No. 785045
        Alana.Black@usdoj.gov


        /s/ STEPHEN H. MCCLAIN
          *Assistant United States Attorney*
        Georgia Bar No. 143186
        stephen.mcclain@usdoj.gov

        /S/ KAMAL GHALI
          *Assistant United States Attorney*
        Georgia Bar No. 805055
        kamal.ghali@usdoj.gov

## Certificate of Service

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

        Paul Kish, Esq.

April 23, 2018

        /s/ KAMAL GHALI
        KAMAL GHALI
        *Assistant United States Attorney*