```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF GEORGIA
                      ATLANTA DIVISION

UNITED STATES OF AMERICA   )
                           )
          v.               )    CASE NO. 1:15-CR-022
                           )
MARC BERCOON               )
```

<u>DEFENDANT'S REPLY TO PROSECUTION'S RESPONSE TO MR.
BERCOON'S MOTION TO RECONSIDER BAIL PENDING SENTENCING</u>

COMES NOW, MARC BERCOON, by and through undersigned counsel, and hereby files this Reply to the Response (Doc. 390) filed by the government regarding Defendant's Motion to Reconsider Bail Pending Sentencing (Doc. 387).  Despite the prosecution's claims to the contrary, this is the classic case for release pending sentencing. Mr. Bercoon's history, background, family obligations and the fact that a quarter-million dollars will be pledged into the Registry of this Court all belie the government's continuing assertions that there is some risk that Defendant will not appear in Court when obligated to do so.

### THE LIE ABOUT RISK OF FLIGHT

There is a well-known joke about three kinds of falsehoods: "lies, ***-**** lies and statistics". Defendant more than acknowledges the various weaknesses when looking to statistical analyses of the criminal justice system.  Despite these weaknesses, it is worth noting that statistical analyses by the Department of Justice continually show a 1-3% chance that a person on bail will flee the federal criminal justice system. These analyses show that the prosecution's inflammatory claims about Mr. Bercoon and his case do not match up with objective and verifiable reality.

One study looked at bail practices and "misconduct" over a 15-year period.  Special Report, United States Department of Justice, Office of Justice Programs, Pretrial Detention and Misconduct in Federal District Courts, 1995-2010, https://www.bjs.gov/content/pub/pdf/pdmfdc9510.pdf. Table 4 from this study demonstrated a 2% "failure to appear" rate over this 15-year span.  A 1990 DOJ study reached the same basic result.  Pretrial Release of Federal Felony Defendants-Federal Justice Statistics Program, 1990, https://www.bjs.gov/content/pub/pdf/prffd.pdf Table 9 (3% overall rate of failure to appear, rates 2% or less for offenders over 35 and those with no prior record).  Another analysis focusing on the years 2008-2010 yields similar numbers. United States Department of Justice, Office of Justice Programs, Special Report, Pretrial Release and Misconduct in Federal District Courts, 2008-2010, https://www.bjs.gov/content/pub/pdf/prmfdc0810.pdf  Table 11  (1% overall rate of failure to appear).

Defendant readily acknowledges that these DOJ studies all focused on pretrial release, as opposed to release pending sentencing (or pending appeal).  Mr. Bercoon has been unable to unearth any studies on the smaller category of Defendants who were continued on their bail until either the sentencing hearing or the end of the appellate process.[1] Despite this distinction, these studies demonstrate that on a purely objective level, exceedingly few people flee the federal criminal justice system.  With this

---

[1] Undersigned has communicated with analysts at BJS, who noted that they do not currently have studies on the rate of Defendants released on bail pending sentencing or appeal who fail to appear, but that this is an "excellent question".

objective analysis in mind, Defendant will next turn to the prosecution's arguments as to why the Court should not reconsider its earlier ruling, even though Defendant's father has pledged to deposit quarter million dollars to secure his son's release pending sentencing.

**REPEATED RELIANCE ON THE "PRESUMPTION" IGNORES REALITY**

The government repeatedly relies on the statutory "presumption" that a Defendant should be detained post-conviction unless that offender rebuts the presumption with clear and convincing evidence that the individual will neither flee nor pose a danger to the community.  Obviously, Congress created this presumption and Courts and litigants must comply with the legislative directive.  However, creating a presumption is not the same thing as mandating a result. Reading the prosecution's pleading, one would think that virtually no Defendant remains on bail after that person either pleads or is found guilty.  However, it does not take a statistical analysis to show that the vast majority of offenders on bail remain on release until their sentencing hearing, and sometimes even longer than that.  BOP and the US Marshal Service have regular practices to deal with Defendants who are given the right to "voluntarily surrender", which allows the person to report to the institution to serve his or her sentence. Reading the prosecution's pleading, one would think that these agencies wasted their time creating these rules because the "presumption" leads to the incarceration of virtually every Defendant at the point when the person pleads or is found

3

guilty.

The presumption is important, it must be considered, but it is not the only consideration. The Court must also decide, considering the various conditions of release, whether the particular individual has shown by clear and convincing evidence that the person is neither a risk of flight or danger to the community. Considering that so many Defendants with far worse cases are allowed to remain on bail demonstrates the fallacy of the prosecution's repeated citation to the presumption in this context.

## THE RED HERRINGS

The United States presents a series of arguments that are seemed designed to divert the Court from the real question here. The Court should reject this use of the red herring fallacy.

The government goes on at length about something not at issue here: whether Mr. Bercoon can qualify for bail pending appeal. (Doc. 390-4-5). Obviously, the parties and the Court have not yet confronted that stage of the proceedings, and the government's musings on this subject are not germane.

The prosecution criticizes Defendant for requesting merely a "brief interruption from custody only to be detained again." Id., at 5. Brief or lengthy, the issue is not the temporal breadth of release, but instead the question is whether the facts surrounding Mr. Bercoon and his family's support clearly demonstrate that he is neither a risk of flight nor a danger to the community.

The United States goes on a length that the jury's verdicts and near-certainty of a prison sentence create an incentive for Mr.

Bercoon to flee. Id., at 5-6. This is related to the prosecution's fallacious use of the presumption, for if this was the case, one wonders why this very United States Attorney's Office regularly takes the position that it has no objection to allowing a Defendant to remain on bail pending sentencing and even agrees on a regular basis for voluntary surrender. Length and certainty of prison are not the issue. Instead, the proper analysis looks to the particular Defendant, his history while on release, and whether conditions can assure his appearance and the safety of the community.

The government asserts that Defendant not only has motive to flee, but "has the means to do so." Id., at 6. Again, this is untrue. Undersigned can assure the Court that Marc Bercoon has no assets and that his unpaid financial obligations have mounted during the defense of this matter.

With no factual basis, the government contends that Defendant has financial means because funds ran through a corporate credit card in his wife's name. Id., at 6-7. The prosecution has not provided such information to the defense, so far as undersigned counsel has been able to determine from the veritable mountain of materials produced over the past 3.5 years. Defendant has no way of responding to the claim that payments made through Mrs. Bercoon's account somehow shows that Mr. Bercoon has assets to use for flight. More importantly, it is not true. As noted before, Mr. Bercoon's father provides the bulk of financial support for the Defendant, Mrs. Bercoon and their three teenaged daughters. While

on bail, Defendant operated a placement service.  The SEC order essentially means that Mr. Bercoon cannot have any credit nor asset in his name.  Many families face similar situations in which they run expenses through a credit card assigned to the spouse with fewer credit restrictions. Again, Defendant does not know what expenses the government is referring to, for many are likely to be legitimate expenses of the business on closer inspection.  This red herring should also be ignored.

The government contends that "there is no reason to take Bercoon at his word that he will not flee," and that "…the Court has little reason to trust Bercoon." Id., at 7, 8.  In support of these claims the prosecution points to the facts presented during trial.  To begin with, the defense still contests these facts, and will do so during the remainder of this case. More importantly, even if Defendant did fool friends and investors, this is a far cry from lying to the Court.

The United States refers to "Bercoon's bizarre behavior" and his request for a 24-hour release period to take care of family obligations after the jury's verdict. Id., at 8. It is important to note that at first the prosecution had no objection to this supposedly "bizarre" request.  Furthermore, there is nothing strange or unusual about a man who has been married for two decades to a severely ill spouse to want a single day for making financial arrangements for that spouse and his three teenaged daughters.[2]

---

[2] Recall that the government's decision to use swat-team tactics to arrest Defendant led to severe psychological issues for one of Mr. Bercoon's daughters who remains in constant fear and ongoing therapy.

The government says that Norman Bercoon's promise to deposit $250,000 means nothing, because of the possibility that "Bercoon has simply talked his father into giving him one last chance to flee." Id., at 9. Undersigned is an officer of the Court. Undersigned counsel has had multiple conversations with Norman Bercoon, none of which included the Defendant. Counsel can assure the Court that Norman Bercoon is an incredibly aware and intelligent nonagenarian. Norman Bercoon was a successful accountant and is unwilling to risk any of his few remaining assets if there is any chance that he will lose the funds. Norman Bercoon only wants what is best for his son, his granddaughters, and his daughter-in-law. He knows nothing about any proposed flight by the Defendant.

As a final effort, the government brings up a supposed "danger to the community", even though the prosecution made no such claim at the end of the trial. Id., at 9-10. Prosecutors regularly cite "waiver" and "procedural default" if a defense lawyer fails to assert an argument when the Court confronts an issue. Even if the Court considers this argument, the prosecution's "economic danger" claims are essentially a rehashing of the fallacies set out above. The fact that Defendant was convicted does not demonstrate he is a danger to the community at present. If that were the case, one would expect these same AUSA's to never agree to bond pending sentencing (or voluntary surrender) for any Defendant convicted of any financial crime. This United States Attorney's Office regularly agrees in financial criminal cases to continued bail

after conviction, and often has no objection to voluntary surrender. Therefore, the fact that a jury found Mr. Bercoon guilty of economic crimes does not mean he can never be released pending the Court's sentencing hearing.

Based on the foregoing, Defendant asks that the Court reconsider its earlier ruling that denied bail pending sentencing. Mr. Bercoon asks that the Court release him on bail that is secured by the $250,000 deposit to be made by Norman Bercoon.

Dated: This 18th day of May, 2018.

                                        Respectfully submitted,

                                        */s/ Paul S. Kish*
                                        PAUL S. KISH
                                        Georgia State Bar No. 424277
                                        ATTORNEY FOR MARC BERCOON

Kish & Lietz, P.C.
225 Peachtree Street, NE
1700 South Tower
Atlanta, Georgia 30303
404-588-3991; Fax 404-588-3995
paul@law-kl.com

CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing filing into this District's ECF System, which will automatically forward a copy to counsel of record in this matter.

Dated: This 18th day of May, 2018.


/s/ Paul S. Kish
PAUL S. KISH
Georgia State Bar No. 424277
ATTORNEY FOR MARC BERCOON


Kish & Lietz, P.C.
225 Peachtree Street, NE
1700 South Tower
Atlanta, Georgia 30303
404-588-3991; Fax 404-588-3995
paul@law-kl.com