IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MARC E. BERCOON,  :  <br> : <br> : <br> : <br> Movant, : <br> : <br> v. : <br> : <br> : <br> : <br> UNITED STATES OF AMERICA, : <br> : <br> : <br> : <br> Respondent. : | CRIMINAL ACTION NO. <br> 1:15-CR-0022-LMM <br><br><br> CIVIL ACTION NO. <br> 1:23-CV-0107-LMM |

## **ORDER**

This matter is before the Court for consideration of the Final Report and Recommendation (R&R), Dkt. No. [574], in which the Magistrate Judge recommends that Movant Marc E. Bercoon's 28 U.S.C. § 2255 motion to vacate his conviction, Dkt. No. [544], be denied. Movant has filed his objections to the R&R. Dkt. No. [580].

## **I. Background**

On February 21, 2018, a jury of this Court convicted Movant of conspiracy to commit mail and wire fraud, five counts of mail fraud, conspiracy to commit wire and securities fraud, four counts of wire fraud, and securities fraud. Dkt. No. [374]. In a lengthy opinion, the Eleventh Circuit affirmed Movant's

convictions and sentences. *United States v. Goldstein*, 989 F.3d 1178 (11th Cir. 2021). The Magistrate Judge provided a comprehensive description of the facts of Movant's crimes and the procedural history of this matter, Dkt. No. [574] at 1-7, which need not be repeated here. Briefly, Movant's convictions arise out of his engaging in two fraud schemes: (1) a "pump and dump" market manipulation in which Movant took actions that artificially inflated the value of the penny stock of a company controlled by Movant and his co-defendant and then fraudulently sold that stock through straw accounts to make a profit, and (2) a scheme to sell shares of a privately traded company based on misleading and fraudulent representations. In its opinion affirming Movant's convictions, the Eleventh Circuit described the evidence establishing Movant's guilt as "overwhelming" three separate times. *Goldstein*, 989 F.3d at 1190, 1200, 1205.

In his lengthy pro se § 2255 motion, Bercoon raises seven numbered grounds for relief, many of which contain numerous sub-grounds such that he raises a total of 97 separate claims. All of these claims are framed as claims of ineffective assistance of trial counsel, and this Court agrees with the Government's characterization that Movant "appears to have simply enumerated every grievance or quibble he could find with the entire, lengthy record in his case." Dkt. No. [577] at 3.

The Magistrate Judge provided an exhaustive review of the record and discussed Petitioner's claims for relief at length. In her extensive analysis of Movant's claims, the Magistrate Judge determined that Movant had not

demonstrated that his counsel was deficient and/or that Movant had suffered prejudice. As a result, the Magistrate Judge determined that Movant is not entitled to relief under the standard for evaluating ineffective assistance claims under *Strickland v. Washington*, 466 U.S. 668 (1984).

## II. Legal Standard

A district judge has broad discretion to accept, reject, or modify a magistrate judge's proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 680 (1980). Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of the Report and Recommendation that is the subject of a proper objection on a de novo basis and any non-objected portion under a "clearly erroneous" standard. "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988).

## III. Discussion

### A. Ground 1

At the outset, this Court adopts the Magistrate Judge's discussion of the standard for establishing a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), Dkt. No. [574] at 9, to which Movant has not objected. In his Ground 1, Petitioner claims that his trial counsel was ineffective for failing to challenge the affidavit that a Federal Bureau of Investigation (FBI) special agent used in support of a warrant application to

3

intercept calls and information from Movant's phone. Briefly, the affidavit, Dkt. No. [497-1], described events before, during, and after two separate pump and dump schemes related to stock in a company called MedCareers Group, Inc. (MCGI).

According to Movant, there were 43 instances where the affidavit related false information, and the agent either knew they were false, or he made the false representations with a reckless disregard for the truth. *See United States v. Maxi*, 886 F.3d 1318, 1331 (11th Cir. 2018) (noting that a wiretap supported by material and deliberate false statements or omissions is invalid, but negligent, insignificant, or immaterial misstatements do not invalidate the wiretap); *see also* R&R, Dkt. No. [574], at 10-11 (expanding on this standard).

The Magistrate Judge reviewed each of Movant's 43 claims and determined that (1) the claimed misrepresentation was not, in fact, a false statement (or Movant failed to establish a misstatement), (2) Movant failed to show that the agent made an intentional or reckless misstatement, (3) the alleged misstatement was immaterial and did not undermine confidence in the showing of probable cause, (4) Movant's codefendant unsuccessfully raised the alleged misstatement on appeal, and the Eleventh Circuit rejected the claim and Movant thus cannot demonstrate prejudice, (5) Movant took a statement in the affidavit out of context or made an unfair reading of the statement, (5) Movant's claims about particular statements were nonspecific and conclusory, and/or (6) Movant's claims, even if true, did not show that his rights had been violated. Dkt. No. [574] at 8-31.

Movant's arguments in his objections that the Magistrate Judge erred are not compelling. His contention that the two confidential sources that the agent relied on for some of the allegations in the wiretap affidavit had no "background in securities fraud matters" and had no prior history as reliable government sources, Dkt. No. [580] at 2, is entirely immaterial. The two confidential sources provided testimony about factual matters—what the Defendants did and did not do—such that their expertise in the securities industries did not matter, and the affidavit provided ample reason to demonstrate that the sources should be considered reliable. Dkt. No. [497-1] at 8 n.1, 30 n.13. Movant further nitpicks about the dates of when certain events occurred or discrepancies over whether his codefendant traded in a particular account, but again, he has not shown that these discrepancies mattered. If a certain witness misremembers a date, that fact alone does not serve to undermine a finding of probable cause.[1] Likewise, the import of the trading activity was that the activity was illegal regardless of what account was used to make certain trades.

The same general theme applies to all of Movant's arguments that the Magistrate Judge erred in determining that he is not entitled to relief with respect to his Ground 1. The affidavit set forth certain actions taken by Movant that clearly indicated (or established probable cause to believe) that he was engaged in

---

[1] Moreover, when the illegal trading activity occurred is a matter of record. The Government clearly established that on certain dates, the stock in question was improperly promoted (pumped) and then sold at a profit (dumped). That the affidavit *might* have been somewhat unclear about those dates simply does not matter.

an illegal pump and dump stock trading scheme. The illegality of those actions did not depend solely on whether a company was or was not registered under a securities law or made certain disclosures. This Court agrees with the Magistrate Judge's determination that the alleged misstatements would not undermine the showing of probable cause, Dkt. No. [574] at 13, and Movant's arguments raising those contentions thus fail.

This Court is further unconvinced by Movant's arguments about a bill of sale discussed in the affidavit. According to the affidavit, Movant drafted a bill of sale that purported to show that a confidential source paid $45,000 for certain stock, but that payment was never made. Movant argues that the affidavit's characterization of the bill of sale as fake or fictitious and evidence of fraud is a false statement. *See* Dkt. No. [497-1] at 20 & n.11. However, a bill of sale that says one person paid another when no payment was made can be considered fake. Moreover, the affidavit states that "[i]t is unclear why [Movant] created the fake bill of sale" and speculates that his reasons appear to be fraudulent. *Id.* Nothing about the affidavit's statements on this topic are troubling or even questionable.

In response to Movant's next objections, Dkt. No. [580] at 13-15, this Court further agrees with the Magistrate Judge that the issues of (1) whether Movant paid a confidential source and (2) the structure of the transaction that formed the MCGI (whose shares were manipulated) are immaterial. Again, the affidavit detailed what clearly appeared to be a pump and dump fraud scheme. Whether

6

the confidential source was paid, whether the source knew about the scheme, and how MCGI was formed or merged does not affect the finding of probable cause.

Movant's next few objections, *id.* at 15-17, rely on the premise that two pump and dump events (in March and May of 2010) never occurred. However, the Government proved at trial that the two events most certainly did occur. *See Goldstein*, 989 F.3d at 1185-86. The fact that they may not have occurred *exactly* as described in the affidavit is immaterial and/or does not show that the affiant made knowing or reckless misrepresentations because the events described in the affidavit and the events proved at trial are materially identical. The discrepancies that Movant points to are about whether the illegal trades were made out of a specific brokerage account, who issued press releases intended to pump MCGI's stock price, and whether the traders used "nominees" to trade stock, *e.g.*, Dkt. No. [544] at 31-33, and those issues simply do not matter. Indeed, the affidavit states that the confidential source did not fully understand what he was seeing during the execution of the pump and dump scheme, and his understanding of what occurred was based in part on what he was told by Movant's codefendant. Dkt. No. [497-1] at 36. Even if some of the particulars about the stock manipulation scheme related by the source were not accurate, the affiant confirmed the basic facts of the pump and dump by looking at historical trading data for MCGI. *Id.* at 39-40. That the affiant did not confirm immaterial facts does not show recklessness.

Movant's final objection regarding his Ground 1—where he asserts that the statement in the affidavit that the Government needed the wiretap to confirm the confidential source's statement is a knowingly false statement—likewise fails. The premise of Movant's contention is that all of the other statements that he points to are false, which the R&R and this discussion shows is not the case, or the purportedly false statements are clearly immaterial.

More generally, this Court concludes that Movant has not shown prejudice to establish his claim of ineffective assistance under *Strickland*. Movant contends that he was prejudiced by the use of evidence from the wiretaps by merely pointing out that the Government used statements gleaned from the wiretaps seventeen times and asserting that the evidence from the wiretap was prejudicial. Dkt. No. [544-2] at 18-19. However, as the Eleventh Circuit repeatedly noted, the evidence of Movant's guilt was overwhelming, and Movant has not made a convincing showing that there is a reasonable likelihood that, had the evidence obtained through the wiretaps been suppressed, the outcome of Movant's trial would have been different. Notably, two of Movant's coconspirators in the pump and dump scheme, Peter Veugeler, Dkt. No. [483] at 5-170, and Eric Cusimano, Dkt. No. [484] at 6-70, provided particularly damning testimony regarding Movant's direct involvement in the MCGI pump and dump scheme. Indeed, on appeal, Movant argued that "the wiretap was unnecessary because the Government had already obtained enough information from the SEC's investigation of MCGI, surveillance, phone records, and two confidential

8

sources to convict Defendants." *Goldstein*, 989 F.3d at 1195. As a result, this Court finds that Movant has not established a reasonable likelihood that the outcome of his trial would have been different if his trial counsel had challenged the affidavit supporting the wiretaps in this case. For the reasons discussed, this Court agrees with the Magistrate Judge that Movant has not shown that he's entitled to relief with respect to his Ground 1.

### B. Ground 2

In Ground 2, Movant argues that he received ineffective assistance of counsel when counsel, in his motion to suppress evidence related to the wiretaps, failed to argue that the Government did not avail itself of other investigative techniques that were less intrusive than a wiretap and a wiretap was therefore not necessary. In particular, a local businessman, E.S., had approached the FBI about Movant's and his coconspirator's dealings and handed them a recording of his meeting with them. Movant contends that the information that E.S. could have collected in the investigation, had he been recruited to become an informant for the Government, made the wiretaps unnecessary.

The Magistrate Judge determined that it was not plausible that E.S. would have been able to collect all of the information that the Government sought to obtain through the wiretaps. Dkt. No. [574] at 32-33. All appearances are that E.S. is an honest businessman, and he was in discussions with Movant and his coconspirators about selling a publicly traded shell company. There is no

indication that Movant would have openly discussed his shady dealings with such an individual, and his claim otherwise is simply rank speculation.

The Eleventh Circuit found that the wiretaps were necessary. That court noted that the wiretap affidavit "included an 11-page section explaining in detail why the wiretap was needed to accomplish the investigation's objectives." *Goldstein*, 989 F.3d at 1195. According to the Government, "a wiretap was needed to identify all the co-conspirators and reveal the full scope of the conspiracy." *Id.* Movant does not show how E.S. would have been able to identify all of Movant's coconspirators or help investigators collect all of the information they needed. Moreover, Movant's purportedly expedient solution— that the Government should have tried to use E.S. to collect the information and then applied for the warrant when that failed, Dkt. No. [580] at 26—completely ignores the fact that staleness of the information establishing probable cause might have impaired the Government's ability to obtain the warrant. Indeed, Movant raised a staleness challenge to the wiretap affidavit on appeal. *Goldstein*, 989 F.3d at 1193. This Court thus concludes that Movant has not shown that he is entitled to relief with respect to his Ground 2.

**C. Ground 3**

Movant argues that he received ineffective assistance of trial counsel when counsel failed to file a motion to reopen the wiretap suppression after the Government procured evidence in August 2017 that the Government knew the affiant falsely stated a manipulation occurred in March 2011 and the criminal

10

activity was ongoing. The Magistrate Judge determined that Movant had not shown a discrepancy between the 2017 testimony and the information provided in the wiretap affidavit. More important to this Court is the fact that Movant's Ground 3 fails to state a claim for relief because he entirely failed in his § 2255 motion to establish (or even suggest) that he suffered prejudice. As discussed above, the wiretap affidavit properly alleged that Movant had been engaged in an illegal pump and dump scheme. That the scheme occurred twice instead of three times would not tend to negate the showing of probable cause despite Movant's conclusory argument to the contrary. As a result, this Court concludes that Movant is not entitled to relief on his Ground 3.

### D. Ground 4

In Ground 4, Movant argues that he received ineffective assistance of trial counsel when counsel failed to file a motion for dismissal of Movant's case for Government interference with his Sixth Amendment right to counsel by having the Securities and Exchange Commission (SEC) seek an ex parte asset freeze against Movant in an unrelated matter. Apparently, Movant believes that the SEC froze his assets so that he would not have funds to pay for a lawyer. The SEC action occurred in 2015, before Movant was indicted in this Court, and the Magistrate Judge determined that Movant's right to counsel had not attached at that time. *Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 198 (2008) (holding that the right to counsel attaches at "the initiation of adversary judicial criminal

proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment") (citations and quotations omitted).

Movant contends that the Magistrate Judge miscomprehended the specifics of his claim, and he contends that his right to counsel attached at the time that he learned that he was a target of the Government's investigation in 2011. As to the first argument, this Court concludes that Movant has not alleged a Sixth Amendment violation regardless of when his right to counsel attached. In *Luis v. United States*, 578 U.S. 5 (2016), the Supreme Court held that the pretrial restraint of a defendant's *legitimate, untainted* assets needed to retain counsel of choice violates the Sixth Amendment. Movant has not alleged, much less established, that he recovered the frozen assets or that the assets frozen by the Government were legitimate or untainted. As to Movant's second argument, as the citation to *Rothgery*, *supra*, demonstrates, Movant is incorrect.

## E. Ground 5

In Ground 5, Movant claims that he received ineffective assistance of trial counsel when counsel failed to file a pretrial motion to dismiss the indictment based on prosecutorial misconduct in the grand jury proceeding when an FBI agent provided numerous instances of known false and improper testimony. Specifically, Movant raises 49 instances where he claims that the FBI agent provided false testimony or the prosecutor presenting evidence to the grand jury acted improperly. The Magistrate Judge pointed out that, during his appeal, Movant raised claims about the purported grand jury misconduct in his pro se

12

motion to dismiss the indictment that are materially identical to the claims in Ground 5—a fact that Movant does not dispute. The Eleventh Circuit fully rejected Movant's claims on the merits. *Goldstein*, 989 F.3d at 1204-05. Accordingly, trial counsel cannot be deemed ineffective for failing to raise a claim that was rejected by the appellate court.

Movant objects that the Eleventh Circuit denied his motion only on jurisdictional grounds applying plain error review, but if his trial counsel had raised these issues in a pretrial motion, he would have received de novo review of his claims on non-jurisdictional grounds. However, this Court has reviewed each of Movant's 52 instances of purported misconduct, Dkt. No. [544] at 45-68, and not one of them is the least bit concerning. None of the purported misstatements or instances of misconduct would have substantially influenced the outcome of the grand jury proceedings. In any investigation, law enforcement officials may receive information or form beliefs that turn out to be untrue. For example, a confidential source reported that one of the coconspirators used 7-12 brokerage accounts to trade MCGI stock in the pump and dump scheme, Dkt. No. [497-1] at 34, while it later turned out that the coconspirator had not used that many accounts. However, that type of discrepancy does not create legitimate concerns regarding the grand jury process in this case, because, regardless of the number of accounts used, the trading activity was clearly illegal. Many of the alleged misstatements are similarly irrelevant or immaterial. The remainder are either

false claims of a misstatement[2] or they take grand jury testimony out of context in an attempt to create the appearance of a misstatement. *See e.g.*, *Goldstein*, 989 F.3d at 1204.

Moreover, the Eleventh Circuit did find that Movant's assertions of purported grand jury misconduct "rely upon an unfair reading of the grand jury transcript," "lack any legal basis," "w[ere] clearly not prejudicial in context," and/or "w[ere] harmless." *Id.* at 1204-05. The Eleventh Circuit could "discern no misconduct by the Government" during the grand jury proceeding, and the court was "convinced that the grand jury's decision to indict was not substantially influenced by any improper testimony." *Id.* at 1205. Given the Eleventh Circuit's findings, which Movant has not addressed, Movant cannot establish that his trial counsel was deficient for failing to file a motion to dismiss the indictment. *United States v. Nyhuis,* 211 F.3d 1340, 1343 (11th Cir.2000) ("Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255."). Moreover, having reviewed each of Movant's claims of misconduct and finding them all lacking, the undersigned would not have granted a motion to dismiss the indictment based on any of Movant's claims, and he thus cannot demonstrate prejudice under *Strickland*.

---

[2] For example, in Movant's instance 3, he claims that the testifying FBI agent falsely stated that an SEC investigation into another of Movant's companies not involved in this action involved criminal conduct. However, the question that the prosecutor asked was if the investigation into that company was the basis of "any other *civil* or criminal enforcement." Dkt. No. [544] at 46 (emphasis added). The investigation into that company was civil, and the fact that the settlement of that action did not involve an admission of violations is entirely beside the point. *Id.* Similarly, in number 24 Movant again contends that the fake bill of sale discussed above, *see supra* p.6, was not fake. *Id.* at 54.

This Court thus concludes that Movant is not entitled to relief with respect to his Ground 5.

### F. Grounds 6 and 7

In his Ground 6, Movant claims that his trial counsel was ineffective for failing to impeach the testimony of one of Petitioner's coconspirators. In Ground 7, Movant claims that his trial counsel was ineffective for failing to impeach the testimony of one of the confidential sources who testified. With respect to both of those claims, the Magistrate Judge noted that the manner in which counsel cross-examines a witness is a matter of trial strategy and within counsel's discretion. Dkt. No. [574] at 39. Further, Movant's trial counsel did impeach those witnesses, and the questions that Movant claims his counsel should have asked were inconsequential. *Id.* at 40, 42-43. Finally, the Magistrate Judge determined that Movant cannot establish prejudice in the face of the overwhelming evidence of his guilt. *Id.* at 41-42, 43.

In objecting, Movant simply relates a conclusory disagreement with the Magistrate Judge's determination that trial counsel was not deficient, and he entirely ignores the conclusion that he failed to demonstrate prejudice. Movant has not raised a valid objection, and the Magistrate Judge did not clearly err. As a result, this Court concludes that Petitioner has failed to demonstrate that he is entitled to relief with respect to his Grounds 6 and 7.

**IV. Conclusion**

For the foregoing reasons, the Court concludes that the Magistrate Judge is correct. Accordingly, the R&R, Dkt. No. [574], is **ADOPTED** as the order of the Court and the pending 28 U.S.C. § 2255 motion to vacate, Dkt. No. [544], is **DENIED**.

The Court further agrees that Movant has failed to make "a substantial showing of the denial of a constitutional right," and a Certificate of Appealability is **DENIED** pursuant to 28 U.S.C. § 2253(c)(2). The Clerk is **DIRECTED** to close Civil Action Number 1:23-CV-0107-LMM.

**IT IS SO ORDERED** this 4th day of November, 2025.

_____
**Leigh Martin May**
**Chief United States District Judge**